**SALATICH et al. v. HELLEN et al.**

No. 3491-J.

District Court, S. D. California, Central Division.

May 25, 1933.

Joseph Harris Brewer, of Los Angeles, Cal., for plaintiffs.

C. A. Lindeman, of Los Angeles, Cal., for defendants.

JAMES, District Judge.

This case involves entirely a construction of the law of Louisiana, particularly as that law affects the offspring of an adopted child in its right to share in the estate of its adoptive grandparent. The controversy is between a grantee of real property claiming damages under warranty of title from a grantor, who through preceding conveyances had in the year 1919 obtained title from heirs and legatee of one Cunningham. After Cunningham died in the year 1915, his brothers and sisters (no children had been born to him) entered probate proceedings claiming his estate. A divorced wife later produced a will, in which she was named sole legatee. The court recognized her right, and the will was duly probated. An appeal to the Supreme Court of Louisiana was taken by the claimant heirs. Pending decision on that appeal, the legatee and heirs by agreement entered into a conveyance of the parcel of land which was the only property, except small personalty, left by Cunningham, and title to this real property, through several conveyances, was lastly held by Mrs. Iska Brown-Kohlmeyer. Meanwhile the Louisiana Supreme Court (Succession of Cunningham, 142 La. 701, 77 So. 506) had sustained the right of the divorced wife of Cunningham as against the collateral heirs.

In August, 1921, Joseph E. Gahn, then 31 years of age, filed his complaint claiming against Iska Brown-Kohlmeyer a one-third interest in the real property; also claiming an accounting of rental as for the value of the use of the one-third interest. He made his claim as the son of Mathilda Loretta Gahn, who had, in the year 1877, when a child 12 years of age, been legally adopted by Cunningham, the deceased. Cunningham's wife had died in November, 1893, and Cunningham was later married to Julia Elizabeth Grace. From the latter he was divorced, having prior thereto made the will in her favor which was probated.

Mrs. Gahn, the adopted daughter of the Cunninghams, died in August, 1890, prior to the death of her adoptive parent.

It will be noticed that Gahn's suit was commenced more than two years after Mrs. Brown-Kohlmeyer (the last grantee) obtained her deed, and more than four years after the probate court had decreed that the former wife of Cunningham be recognized as the universal legatee. The probate decree was of date March 8, 1917. Gahn claimed that he had not known until a time near to that of the date of the commencement of his suit against Mrs. Brown-Kohlmeyer that his mother had been adopted by the Cunninghams; and so far as appears none of the claimants of Cunningham's estate knew of that fact. When Gahn sued her, Mrs. Brown-Kohlmeyer called in warranty her vendor, Peter B. Salatich (joined with his wife as plaintiff here), and Salatich appeared and defended, with Mrs. Brown-Kohlmeyer, Gahn's suit. Salatich sought to call into the suit the pre-

ceding vendor, wife of defendant here, Joseph Hellen, but the latter had removed from the state of Louisiana and received no notice of the suit. The cause was tried in the Louisiana court, and judgment was rendered against Gahn, the court holding that the limitation (or prescription) of five years operated to defeat recovery. The Supreme Court of Louisiana, holding that the prescriptive period commenced to run at the date of the probate judgment of March 8, 1917, reversed that judgment and directed the district court to award the relief to Gahn as he had prayed for (Gahn v. Brown, 160 La. 796, 107 So. 576, 579). This was later done, and the defendant there, Mrs. Brown-Kohlmeyer, was also given judgment of recoupment against Peter B. Salatich (plaintiff here) as warrantor.

The law of Louisiana provides that a vendee, when his title is questioned by suit, may notify his vendor "by calling in the vendor to defend the action." Article 2517, Civ. Code La. Art. 2518 provides that, in the absence of this notice, "the warranty is lost," provided "the vendor shall show that he possessed proofs, which would have occasioned the rejection of the demand, and which have not been employed, because he was not summoned in time."

And such is the defense here made. The defendants contend that certain matters available as a defense to the Gahn action were not urged, either by Mrs. Brown-Kohlmeyer or the plaintiff Peter Salatich. When the Gahn v. Brown-Kohlmeyer action was tried in the civil district court, the defendants relied largely upon the prescription (limitation) period of 5 years as against Gahn's suit. This was the controlling issue ruled upon by the Supreme Court of Louisiana.

In a supplemental brief on petition for rehearing before the Supreme Court, the plaintiff here and Mrs. Brown-Kohlmeyer urged that Gahn, as the legitimate son of the adopted child of Cunningham, deceased, had no standing as an heir, or any right whatsoever to claim any part of his adoptive grandparents' estate. The Supreme Court held that, as that point had not been "contested in the pleadings, was not urged in the original briefs or in the oral argument either on the original or the rehearing," the court was not called upon to decide the plaintiff's legal status as an heir.

[redacted] It is made plain then that the question as to whether Gahn was entitled to any share of Cunningham's estate was not, under the issues made, brought before the court; at least such was the pronouncement of the Supreme Court of Louisiana, and that must be taken as conclusive of the matter notwithstanding that it appears of record that the defendants prior to answer duly excepted to Gahn's complaint on the ground of "no right or cause of action." Under the Louisiana Civil Code, art. 2518, it is permitted to show here in defense that in no case was Gahn entitled to a share in the property left by Cunningham. If he was not a "forced heir," he was without right to maintain the action against Mrs. Brown-Kohlmeyer. Article 214, Civil Code La., provides, in part, as follows: "Any person may adopt another as his child, except those illegitimate children whom the law prohibits him from acknowledging; but such adoption shall not interfere with the rights of forced heirs. * * * The person adopted shall have all the rights of a legitimate child in the estate of the person adopting him, except as above stated."

A forced heir is one in whose favor the law has reserved a specific interest in the estate of a decedent; such an heir cannot be deprived of his portion (légitime) by testamentary act or in any manner other than by his own consent. The pertinent sections of the Civil Code of Louisiana read as follows:

"Art. 1493. Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number. Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.

"Art. 1494. Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leave a father, mother or both.

"Art. 1495. In the cases prescribed by the two last preceding articles, the heirs are called forced heirs, because the donor can not deprive them of the portion of his estate reserved for them by law, except in cases where he has a just cause to disinherit them."

[redacted] The question then is, assuming, as was the fact, that there were no forced heirs of Cunningham of the natural blood, and assuming further that the mother of the claimant Gahn, had she been living at the death of her adoptive father, would have had the status of a forced heir, did the son by rule of representation succeed her in right?

The defendants answer that the adopted

child of Cunningham, having predeceased the adoptive parent, never acquired an interest that she could transmit; that succession by representaion is allowed only to blood descendants or legal heirs; that those not of the blood are "irregular" and do not take by representation. Children are defined (article 3556, subdiv. 8) as follows: "Under this name are comprehended, not only the children of the first degree, but the grandchildren, great grandchildren, and all other descendants in the direct line. Natural children, even though recognized, make no part of the children properly so called, unless they have been legitimated."

Article 887 describes legal heirs as follows: (1) "The children and other lawful descendants"; (2) "The fathers and mothers and other lawful ascendants"; (3) "The collateral kindred."

Three kinds of successions are described (article 875), to wit: Testamentary, legal and irregular. Article 877: "Legal Succession is that which the law has established in favor of the nearest relation of the deceased." Article 878: "Irregular Succession is that which is established by law in favor of certain persons, or of the State in default of heirs either legal or instituted by testament." Article 895: "Representation takes place ad infinitum in the direct descending line."

It would seem quite clear that in the case of an adopted child the right secured by the adoption statute is a right in irregular succession; it is not in the blood line, but rather one "established by law in favor of certain persons." In Hawkins v. Williams, 146 La. 529, 83 So. 796, 799, the court holds that: "An irregular heir, * * * inherits only a right of action to be judicially recognized as an heir and to obtain possession of the estate. And no one can transmit a right of action before having acquired it."

The mother of Gahn, had she come into possession, or of the right thereto, of any part of the estate of her adoptive parent, would have had in herself an estate which she could have transmitted to her son as heir. Being not of the permitted blood line, not in the regular line of descendants, the mother's right would not follow to the son by right of representation, for, as before stated, representation is not recognized in the case of irregular heirs. The statute authorizing adoption and providing that, except as to forced heirs, the adopted shall have the same right in the adoptant's estate as a legitimate child, contains no words carrying over that right to descendants. Cunningham v. Lawson, 111 La. 1024, 36 So. 107, and Succession of Hosser, 37 La. Ann. 839, show no statement that the right descends by representation. To this point as an aid to the interpretation, and because both the French law and the law of Louisiana have as their origin the Code Napoleon, French text-writers are quoted. Particularly pertinent is the statement from B. Bandy-La Cantinerie, Vol. 5, p. 14, where the author declares: "Article 350, which accords to the adopted, on the succession of the adopter, the same rights as a legitimate child, keeps likewise silent on the descendants of the adopted. The drafting of this article differs in a striking way from the one in Art. 745 which regulating the hereditary right of legitimate children, takes good care to mention the descendants of the children alongside of them. In fact, it is adding to the law, it is making the law, to extend the effects of the adoption to the descendants of the adopted; it is to disregard the principle of restrictive interpretation which should be our guide in this exceptional matter."

The Louisiana Civ. Code, article 902, contains provisions similar to those of article 745 of the French Code, which the author quoted from refers to. Argumentatively is cited the decision in Kruse v. Pavlovich, 6 La. App. 103. A statute gives a right of action for tort, and provides that "the right of this action shall survive in case of death in favor of the children * * * of the deceased." The court held, in the case last cited, that an adopted child was not included among "children"—that the word "children" meant legal heirs.

The right then that the mother of Gahn had to share in the estate of Cunningham had not ripened into possession at the time she died. That right could not be transmitted under the rule of succession by representation.

It seems to be conceded by all counsel that the question discussed has never been directly passed upon by the courts of Louisiana. Some other matters are argued in the briefs, particularly as to the amount of recovery that should be allowed were plaintiffs to have judgment. The contentions are also urged that the Louisiana Supreme Court had not a full record before it which would have shown an order of court approving the first conveyance by the widow of Cunningham and collateral heirs, which fact, as contended, might have impelled the court to hold that the limitation (prescription) term of 5 years had

run against Gahn's action. These additional matters need not be given particular attention; for, if Gahn, as I have concluded, was not a forced heir of his adoptive grandparent, he had no initial right to support his suit.

Judgment will be for the defendants, with costs.