**Christine KERR and Pat Green Smith, Plaintiffs,**

v.

**MCDONALD'S CORPORATION, Defendant.**

No. CIV.A.1:03CV1328–CC.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 20, 2004.

Harlan Stuart Miller, III, Miller Billips & Ates, Atlanta, GA, for Plaintiffs.

Kelly D. Ludwick, Beth T. Paxton, Kathleen D. Zylan, Kenneth L. Dobkin, Lewis Traywick Duffie, Hunton & Williams, Atlanta, GA, for Defendant.

## ORDER

COOPER, District Judge.

Pending before the Court is Defendant McDonald's Corporation's ("Defendant" or "McDonald's") Motion for Summary Judgment. After hearing oral argument and reviewing the evidence of record, as well as the applicable law, the Court finds that Defendant's motion is due to be GRANTED.[1]

### I. BACKGROUND

#### A. Preliminary Matters [2]

As an initial matter, the Court needs to clarify here the origin of its background facts. The facts set forth herein were taken from the relevant facts in Defendant's Statement of Undisputed Material Facts that were admitted by Plaintiffs Christine Kerr ("Kerr") and Pat Green Smith ("Green Smith") (collectively referred to herein as "Plaintiffs"). The Court recognizes that Plaintiffs have denied many of Defendant's facts as not being "material" in the sense that they have no impact on the outcome of the case. While the Court agrees that certain of the facts set forth by Defendant are immaterial to the issue of whether Plaintiffs' Complaint was timely filed, many of the facts denied by Plaintiffs as immaterial are ei-

---

1. Plaintiffs have submitted a post-hearing brief in support of their contention that Defendant has not met its burden on summary judgment. Insofar as the Court announced at the conclusion of the hearing that it was ruling in favor of Defendant, Plaintiffs' post-hearing brief is improper. Nothing new was presented at the hearing that wasn't contained in Defendant's brief in support of its motion for summary judgment, and Plaintiffs had opportunity to present the arguments raised in their post-hearing brief when they initially responded to Defendant's summary judgment motion. Plaintiffs' post-hearing brief is more in the nature of a motion for reconsideration. However, motions for reconsideration are not an opportunity to instruct the Court on how it could have ruled better the first time, as Plaintiffs are attempting to do in their post-hearing brief. *See Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 916 F.Supp. 1557, 1560 (N.D.Ga.1995), *aff'd*, 87 F.3d 1242 (11th Cir.1996); *see also*, *McCoy v. Macon Water Authority*, 966 F.Supp. 1209, 1223 (M.D.Ga.1997) ("[t]he motion for reconsideration is not an opportunity for a party to improve upon his arguments or try out new arguments; nor is it properly a forum for a party to vent his dissatisfaction with the Court's reasoning").

2. Defendant's Request for Leave to File Reply to "Plaintiffs' Response to Statement of Undisputed Material Facts" [33–1] is GRANTED.

ther relevant for an understanding of the history of this litigation or material to the Court's ruling below. Where Plaintiffs have not denied the substance of these facts, such facts have been deemed admitted. LR NDGa. 56.1B(2).

■ Additionally, Plaintiffs have also attempted to refute certain of Defendant's facts by asserting legal arguments, without citations to record evidence. Such denials are insufficient to create issues of material fact. *Sanders v. Nunley*, 634 F.Supp. 474, 476 (N.D.Ga.1985) ("Nor do mere denials or allegations by the respondent, in the form of legal conclusions unsupported by specific facts, suffice to create issues of material fact to preclude summary judgment") (citations omitted). Where Plaintiffs dispute Defendant's facts and have cited to record evidence in support of their denial, the Court has set forth the substance of the parties' dispute.

### B. *Relevant Factual Background*

Plaintiffs Kerr and Green Smith were employed by McDonald's until they were both involuntarily terminated from their employment on October 31, 2001. At the time of their terminations, Kerr was 59 years old and Green Smith was 54 years old. On April 9, 2002, both Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that they had been dis-criminated against on the basis of their respective ages in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634.

Brenda Webb ("Webb") is a Unit Supervisor at the EEOC's Atlanta office, and has held this position for over 15 years. In this position, Webb supervises a Unit of Investigators and provides guidance with respect to processing charges and investigating cases from the intake stage through resolution. During the relevant time frame, April Sims ("Sims") was one of the investigators supervised by Webb. Sims was the investigator assigned to investigate Plaintiffs' charges of discrimination.[3]

During the time frame that the EEOC was investigating Plaintiffs' charges, both Kerr and Green Smith communicated with Sims about their respective charges at least once a month. At some point prior to Christmas in December 2002, Kerr had a telephone call with Sims in which Sims told Kerr that the EEOC had determined that there was not enough evidence to issue a "reasonable cause" determination in her favor. During this call, Sims explained to Kerr that the EEOC would issue a Notice of Right to Sue without making any finding if Kerr requested a right-to-sue notice.[4] Kerr admits that by early January 2003, at the latest, she knew that the EEOC had ended its investigation and processing of her charge.[5] Similar to

---

3. According to Sims, she processes a charge of discrimination by doing the following: (a) she reviews and investigates the charge; (b) she reaches an initial, tentative decision regarding the merits of the charges; (c) she conducts a predetermination interview with the charging party in which she advises her of her tentative conclusion and offers the charging party the chance to add any additional information; and (d) she then makes a recommendation to her superiors. Sims has no authority to make a decision regarding the termination of a charge of discrimination. All she can do is submit a recommendation to her superiors.

4. While the exact date is unclear, at some point prior to Kerr's phone call with Sims, Kerr had received information in the mail that the EEOC was no longer pursuing her charge. Kerr did not retain this documentation.

5. While Plaintiffs attempt to explain Kerr's testimony by relying on inapplicable case law to support its contention that the EEOC was not foreclosed from taking action at a future date, Kerr's testimony is clear that at the time she signed the document requesting a notice of right to sue letter, she knew that the EEOC was no longer pursuing her case, and there is no evidence that she had any understanding

Kerr's circumstance, at some point in December 2002, Sims had a telephone call with Green Smith in which Sims told Green Smith that the EEOC had determined that there was not enough evidence to issue a "reasonable cause" determination in her favor. At this point, Green Smith understood that the EEOC's investigation of her charge was over and that her case would be brought to conclusion. Green Smith testified that during their conversation, Sims "probably" explained to Green Smith that a no cause determination could be avoided by Green Smith requesting a right-to-sue notice. Deposition of Pat Green Smith (hereafter "Green Smith Depo."), pp. 41–42.

A few days before December 30, 2002, Kerr contacted Sims by telephone and requested that the EEOC issue Kerr a Right-to Sue ("RTS") letter. Also at some point prior to December 30, 2002, Green Smith left Sims a voice mail message requesting that the EEOC issue Green Smith a RTS letter.

According to Webb, a RTS letter can be issued by the EEOC based upon an oral request by a charging party.[6] The EEOC then follows up the oral request by asking for written confirmation of the oral request. On December 30, 2002, the EEOC sent a letter to each Plaintiff asking her to confirm her previous oral request for issuance of a RTS letter with respect to her charge.[7] The letters also asked that each Plaintiff complete a "Request for Notice of Right to Sue" form that was enclosed with the letter, and return the form to the EEOC by January 8, 2003.[8]

On January 3, 2003, Kerr signed the Request for Notice of Right to Sue form and subsequently sent the form back to the EEOC. Kerr clearly understood when she signed the form that the EEOC had ended its investigation and processing of her charge and that it was not going to take any further action on her case, because this was made clear to her by Sims.[9]

When Green Smith received the December 30th letter from the EEOC, she marked on the outside of the envelope containing the letter that she received it on December 31, 2002. Green Smith signed her Request for Notice of Right to Sue form on January 2, 2003, and mailed it back to the EEOC on January 3, 2003. Green Smith admits that she submitted her signed Request for Notice of Right to Sue from to the EEOC because she had already decided that she wanted to file a lawsuit against McDonald's.

Both of the Request for Notice of Right to Sue forms signed by Kerr and Green Smith indicated that Plaintiffs were requesting a Notice of Right to Sue because they wanted to pursue their charges in

---

that the EEOC might take action at some future point.

6. Plaintiffs' citation to an EEOC regulation that supposedly prohibits issuance of notice of right to sue before the expiration of 180 days unless such request is in writing does not refute the fact that both Plaintiffs testified that they called Sims requesting a RTS letter at some point in late December, nor refute Webb's testimony that the Atlanta EEOC office issues RTS letters upon a charging party's oral request in certain circumstances.

7. Plaintiffs inexplicably deny this fact even though the letter clearly states that the EEOC

is seeking to obtain written confirmation of Plaintiffs' oral requests for a right to sue notice.

8. The letter actually asks that the form be returned by January 8, 2002, but this is clearly a typographical error.

9. Here again, Plaintiffs cite to inapplicable case law and, without any evidentiary support, contend that the EEOC's transmission of the 12/30/02 letter and the Request for Notice of Right to Sue form did not foreclose the EEOC from taking any action with respect to Kerr's charge at a future date.

federal court. Neither Kerr or Green called anyone at the EEOC after January 3, 2003, the date they sent their signed Request for Notice of Right to Sue forms. Green Smith testified, however, that her RTS letter was important to her and that she was "looking for and waiting for" the letter to arrive in the mail. Green Smith Depo., pp. 69–70.

The EEOC sometimes uses "routing sheets" to record certain actions taken in connection with closing out a charging party's file. The date submitted entry on the routing sheet indicates the date a file is submitted by an Investigator to the Unit Supervisor for closure. Webb explained that this date is not necessarily the date that the Investigator submits the RTS letter to her for approval, because, for instance, if a verbal request for a RTS letter had been made the Investigator may wait until he or she has written confirmation of this request to submit the complete file for closure.

The RTS letters for both Kerr and Green Smith were signed by Webb and were dated as mailed on December 31, 2002. Webb does not personally mail the RTS letters, but instead the letters are mailed by a clerk. After signing the RTS letters related to both Plaintiffs, Webb indicated to the clerk via the routing sheet to make copies and mail out the closure document, which is the notice of right to sue. While the routing sheet for Kerr's file indicates that Webb instructed the clerk to make copies and mail out the RTS letter on December 31, 2002, it is evident from the sheet that the date of January 8, 2003 had been crossed out. The top of the routing sheet also indicated that Kerr's file had been submitted for closure on January 8, 2003.[10] Green Smith's routing sheet indicates that Webb instructed the clerk to make copies and mail out the RTS letter on December 31, 2002, but the date the file was submitted for closure is somewhat ineligible.[11]

Although Webb is unable to confirm the exact date that Plaintiffs' RTS letters were mailed[12] and she does not know who mailed them,[13] Webb testified that she does not submit investigative files for closure unless she has made sure that the RTS letters have been signed and sent out. The routing sheets for both Kerr and Green Smith indicate that, at the very

---

**10.** The date of submission shows January 8, 2002, but it is clear that this is a typographical error, and that the year was actually 2003.

**11.** The date appears to be December 30, 2002.

**12.** Kerr also has no personal knowledge of when the EEOC mailed out her RTS letter. However, at her deposition, Kerr testified that it was possible that she received a RTS letter in the mail sometime in January 2003.

The Court also points out here that in Plaintiffs' response to Defendant's statement of fact that Green Smith has no personal knowledge of when the EEOC mailed out her RTS letter, Green Smith admits that she has no personal knowledge of when the letter was mailed, but then states that the RTS letter was received by her on February 2, 2003. This date contravenes the contention made by Plaintiffs throughout this litigation that both Kerr and Green Smith received their RTS letters on February 15, 2003. *See* Unsworn Declaration of Christine Kerr, ¶ 2; Unsworn Declaration of Pat Green Smith, ¶ 2.

**13.** Webb did not have a clerk assigned specifically to her unit, and therefore she cannot identify who placed Plaintiffs' RTS letters in the mail. According to Webb, when a charging party requests a RTS letter, the EEOC generally tries to process the request and get the letter issued within a week or so. After the RTS letter has been signed and dated, the EEOC would normally mail the letter within one or two days, unless it is a weekend. Webb also testified that, had she learned that the mailing or delivery of the RTS letters to Kerr or Green Smith had been delayed, she would have re-sent the documents to both Plaintiffs and to McDonald's with an explanation.

latest, their files were submitted-for closure by January 8, 2003.

Plaintiffs dispute that the RTS letters were mailed on the date indicated on the letters. In this regard, Plaintiffs state that RTS letters were not submitted to Webb for her signature until January 9, 2003, which is more than a week after the date of mailing indicated on the letters. Defendant admits that Plaintiffs' RTS letters could have been mailed out after the EEOC received written confirmation of Plaintiffs' oral requests for these letters on January 7, 2003.

The EEOC's normal practice is to mail the RTS letter to the Charging Party and to send a copy to the respondent at the same time. Green Smith produced an envelope to Defendant that was addressed to her from the EEOC and postmarked January 9, 2003. The envelope produced was empty, and Green Smith testified that she did not have the contents of the envelope and did not recall what the envelope contained.[14] Defendant's outside counsel received a copy of the RTS letter issued to Kerr by January 10, 2003, and received a copy of the RTS letter issued to Green Smith by January 14, 2003.[15]

Both Plaintiffs have submitted declarations stating that they did not receive copies of their RTS letters until February 15, 2003.[16] Kerr and Green Smith acknowledge that when they received a copy of their RTS letters, the letters indicated that they had been mailed on December 31, 2002. However, neither Plaintiff called

Sims or anyone else at the EEOC to ask why the RTS letter indicated that it had been mailed on this date. Both Plaintiffs testified that they retained counsel shortly after they received the RTS letter from the EEOC.

On May 15, 2003, Plaintiffs filed the instant action, alleging violations of the ADEA and the Older Workers Benefit Protection Act, 29 U.S.C. § 626. After being served, Defendant filed a motion to dismiss Plaintiffs' Complaint, arguing that the Complaint was time-barred because it was not filed within ninety days of Plaintiffs' receipt of their right to sue notices. Because the record before the Court was unclear, and because matters outside the pleadings had been submitted by the parties, the Court denied Defendant's motion to dismiss, but gave the parties 45 days to conduct discovery on the issue of the timeliness of Plaintiffs' Complaint, and gave Defendant twenty days thereafter to file a motion for summary judgment on this issue. Following the limited discovery period, Defendant filed the instant motion for summary judgment, asserting that the results of discovery confirm that Plaintiffs' Complaint is time-barred because they did not file their Complaint within the 90–day statutory limitations period.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**14.** The EEOC identified the January 9, 2003 postmarked envelope produced by Green Smith as the type of envelope that the EEOC's Investigative Unit would use to send a Charging Party's initial notice of right to sue.

**15.** The EEOC's file records demonstrate that sometime prior to the closure of Plaintiffs' files, Defendant's outside counsel were added to the contact sheet as the representatives for McDonald's.

**16.** Kerr has never produced a copy of the RTS letter that she received from the EEOC and has testified that she no longer has it. Both Plaintiffs have submitted copies of the envelopes that contained copies of their EEOC files that are postmarked February 14, 2003.

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), the Supreme Court stated: "[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

The party opposing summary judgment is required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Id.,* at 324, 106 S.Ct. at 2553.

A court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied,* 815 F.2d 66 (11th Cir.1987). However, Rule 56 "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (to defeat summary judgment, nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"). The

materiality of facts is governed by the substantive law. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that the factual issues may reasonably be resolved in favor of the nonmoving party. *Id.*

### B. *Timeliness of Plaintiffs' Complaint*

■ As previously discussed by the Court in its ruling on Defendant's motion to dismiss, filing an action within 90 days of receipt of a notice of right to sue from the EEOC is a condition precedent to bringing an action under the ADEA, and Plaintiffs have the burden of showing that they have met this requirement. *Green v. Union Foundry Co.,* 281 F.3d 1229 (11th Cir.), *cert. denied,* 537 U.S. 953, 123 S.Ct. 422, 154 L.Ed.2d 302 (2002); *see also, Chapman v. Travalco, U.S.A., Inc.,* 973 F.Supp. 1045, 1046–1047 (S.D.Fla.1997). The Eleventh Circuit has determined that the 90–day limitations period is to be analyzed "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimal responsibility in resolving their claims without conditioning a claimant's right to sue ... on fortuitous circumstances or events beyond [her] control...." *Zillyette v. Capital One Financial Corp.,* 179 F.3d 1337, 1340 (11th Cir.1999) (citation omitted).

■ In the present action, even when viewing the evidence of record in the light most favorable to Plaintiffs, the only reasonable conclusion that can be drawn from the record is that Plaintiffs failed to file their lawsuit within the 90–day period required by law. Plaintiffs rely on their bare assertion that they did not receive their RTS letters until February 15, 2003.[17] However, the evidence in the record demonstrates that both Plaintiffs were

---

**17.** As noted, *supra,* Green Smith stated in her response to Defendant's Statement of Facts

that she received her RTS letter on February 2, 2003. As such, the Court is unclear as to

on notice that the EEOC's investigation had ended and that their RTS letters were forthcoming by January 3, 2003 at the latest. In this regard, Kerr and Green Smith both requested RTS letters orally by December 30, 2002, and by January 3, 2003 they had both confirmed their requests in writing. Both Plaintiffs understood at this point that the EEOC had ended its investigation and its processing of their charges. Assuming that the RTS letters were not submitted to Webb for her signature (and that their files were not closed) until after the EEOC received Plaintiffs' written confirmation of their requests for RTS letters on January 7, 2003, the RTS letters were mailed out to Plaintiffs by January 9, 2003. This conclusion is supported by the fact that Green Smith produced an envelope sent to her from the EEOC postmarked January 9, 2003—even though she can't remember its contents [18] —as well as by the fact that McDonald's received copies of Kerr and Green Smith's RTS letters from the EEOC by January 10 and 14, 2003, respectively.[19] Allowing three additional days from January 9, 2003 for mailing, the 90–day period thus ended on April 12, 2003. Because Plaintiffs did not file their Complaint until May 15, 2003, their Complaint is time-barred and dismissal of this action is warranted.

■ Although Plaintiffs have expressly stated that they are not seeking application of the doctrine of equitable tolling, certain other facts in the record are pertinent here. Particularly, the Court points out that both Plaintiffs were represented by counsel shortly after they received their RTS letters. Further, both Plaintiffs were aware that their RTS letters were dated December 31, 2002, which would "indicate[ ] to a diligent plaintiff or counsel that the 90–day period may have begun to run earlier" than February 15th, the date that Plaintiffs state they first received their RTS letters. *Josiah–Faeduwor*, 785 F.2d at 346. Assuming that the 90–day period commenced on the date indicated on Plaintiffs' RTS letters, Plaintiffs still had 44 days left in the 90–day period to file their lawsuit. However, Plaintiffs ignored the date on their letters, and did not file their lawsuit until 89 days after February 15, 2003. Under such circumstances, equitable tolling is not appropriate. *See, e.g., Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1268 (10th Cir.1996) (even though plaintiff claimed to have mental illness, Court rejected plaintiff's equitable tolling argument where plaintiff was represented by counsel during the 90–day period and his attorney had adequate time to initiate action within that period); *see also, Bost v. Federal Express Corp.*, 372 F.3d 1233, 1242 (11th Cir.2004) ("Equitable tolling is inappropriate when a plaintiff did not file an action promptly or failed to act with due diligence"); *Freeman v. CSX Transp., Co., Inc.*, 730 F.Supp. 1084, 1086–87 (M.D.Ala.1989) ("Equitable tolling is particularly inappropriate when plaintiff has consulted counsel during the statutory period.").

## III. CONCLUSION

For the above-stated reasons, Defendant's Motion for Summary Judgment [26–

---

the exact date that Green Smith is actually contending that she received the letter.

**18.** *See Josiah–Faeduwor v. Communications Satellite Corp.*, 785 F.2d 344, 345 (D.C.Cir. 1986) (where plaintiff argued that it was not clear if a copy of the RTS notice was in an envelope received by her attorney from the EEOC, the Court determined that "[i]f the envelope was empty, or if it contained something other than the right-to-sue notice, ... the recipient was best positioned to come forward with clarifying evidence").

**19.** Kerr also testified that it was possible that she received a RTS letter in the mail sometime in January 2003.

1] is GRANTED, and this action is hereby DISMISSED.

## JUDGMENT

This action having come before the court, Honorable Clarence Cooper, United States District Judge, for consideration of defendant's motion for summary judgment, and the court having granted said motion, it is

**Ordered and Adjudged** that the plaintiff take nothing; that the defendant recover its costs of this action, and the action be, and the same hereby, is **dismissed.**