[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15143
Non-Argument Calendar

_____

D. C. Docket No. 03-00556-CV-J-20-HTS

CHRISTINE ANNETTE RAMON,

Plaintiff-Appellant,

versus

AT&T BROADBAND,
a.k.a. Comcast Cable Communications, Inc.,

Defendant-Appellee,

UNUM PROVIDENT,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 31, 2006)**

Before TJOFLAT, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Christine Annette Ramon, pro se before the district court and represented by counsel on appeal, challenges the district court's grant of summary judgment for AT&T Broadband, her former employer, on employment discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Equal Pay Act ("EPA") of 1963, 29 U.S.C. § 206(d). The district court ruled that Ramon failed to exhaust her administrative remedies as to her hostile work environment and retaliation claims, found that some factual allegations could not be considered because they were time barred, and concluded that Ramon had not refuted AT&T's legitimate reasons for the claimed discriminatory actions and that the Ramon had failed to connect her health issues to an impairment of a life function, as required by the ADA. We AFFIRM.

## I. BACKGROUND

A. Allegations and Evidence Introduced To Support Summary Judgment

Ramon, a Mexican-American female, filed a pro se complaint for employment discrimination and retaliation under against her employer, AT&T

Broadband.[1] Ramon indicated in her complaint that she was raising claims under Title VII of the Civil Rights Act of 1964, because she was discriminated against and harassed based on her race, sex, national origin, and disability. She also claimed that AT&T retaliated against her for complaining of discrimination by terminating her employment, harassing her, and failing to provide security despite AT&T's harassment policies.

Ramon alleged that she began working at AT&T in May 2000 as a Provisioning Specialist. In that position, Ramon, as a bilingual employee, provided translating services and received a bilingual pay differential. Ramon was later transferred to the Broadband Service Assurance Center ("BSAC"), where she no longer received bilingual pay. She alleged that her supervisor told her that the end to her bilingual pay was due to cutbacks but she still would have to perform translating services or risk being terminated. Ramon also alleged that, throughout her employment with AT&T, she suffered from many chronic health issues. Through 2001, Ramon was on and off of short term disability ("STD") leave.

AT&T moved for summary judgment on all the claims raised in Ramon's complaint. AT&T argued that Ramon's claims relating to discrimination,

---

[1]Ramon also brought claims against UNUM Provident, AT&T's disability benefits administrator, but the district court dismissed the claims against UNUM, and Ramon does not challenge that dismissal on appeal.

harassment, and retaliation prior to 1 October 2005 were time barred because those acts took place more than 300 days before she filed her discrimination charge with the Texas Commission on Human Rights.[2]  AT&T also argued that Ramon failed to exhaust her administrative remedies as to her claims of harassment, race discrimination, and retaliation because those claims exceeded the EEOC charge. Next, with respect to Ramon's disability discrimination claim, AT&T maintained that Ramon could not establish that: (1) she was disabled during the relevant time frame; (2) she was qualified to recover under the ADA; or (3) she was discriminated against based on her disability.   Finally, AT&T argued that Ramon had failed to allege facts supporting an Equal Pay Act violation.

AT&T submitted a copy of Ramon's 1 August 2002 EEOC charge.   In the charge, Ramon indicated that she was raising claims of discrimination based on sex, national origin, and disability, as well as a claim under the Equal Pay Act. She alleged that, on or about 13 October 2001, she was informed that she would no longer receive bilingual pay because of cutbacks, but she would have to continue to provide translation services.  Additionally, she alleged that she was denied STD leave when she was one month away from becoming eligible even though AT&T could have allowed the leave under its emergency policy.  A white employee with

_____

[2]Ramon initiated this case in Texas, but it subsequently was transferred to the Middle District of Florida.

4

less seniority was granted STD leave under the emergency policy. Ramon also alleged that she was informed that she had to return to work on 14 March 2002 and was terminated on that date without being granted a three-day grace period, while a white employee was allowed to return to work on the third day and quit her job, and the employee received the same severance package as employees who had been laid off, even though she had yet not been employed at AT&T for two years.

AT&T also submitted a declaration prepared by Jerry D. Thomas, Human Resources Manager at AT&T. He stated that Ramon transferred to the BSAC division in August 2001. Ramon no longer received a bilingual pay differential after the transfer because employees, regardless of gender, in the BSAC division do not receive bilingual pay. In October 2001, Ramon went on STD leave. However, UNUM notified AT&T that, as of 13 November 2001, Ramon's STD benefits would be terminated because the documentation provided by her medical providers did not support her leave request. On 22 February 2002, Thomas sent Ramon a letter informing her that she must either file for FMLA relief or return to work by 14 March 2002. The letter did not include a three-day grace period because AT&T has no such provision in its leave policy. When Ramon did not return to work, Thomas inquired whether she had submitted her FMLA paperwork and learned that she had failed to provide the medical certification required for

5

approval of FMLA leave.  As a result, Ramon's employment was terminated effective 15 March 2002.

Thomas further stated that he was aware that Doreen Caffrey filed a charge of discrimination with the EEOC immediately following the initiation of her leave and STD benefits in June 2001.  The terms and conditions of Caffrey's leave and termination were determined in the context of a confidential mediated settlement with the EEOC.

In support of her opposition, Ramon submitted several medical reports, mostly related to examinations that took place after she left AT&T.  A portion of a report entitled "Discharge Instructions (cont.)," dated 18 April 2001, indicated that Ramon suffered from costochondritis, which causes chest pain due to an inflammation of the cartilage joining the ribs to the breast bone.  Exh.2-8 at unnumbered 8.  The report stated that this condition is not caused by heart or lung problems, and, although the exact cause is not known, it often occurs during times of emotional stress and is not dangerous.  Further, an examination that took place on 26 February 2002, revealed that she had evidence of chronic large bulla on the right side, but she was not having symptoms associated with that condition.

B.  The District Court's Ruling

The district court granted AT&T's motion for summary judgment.  First, the district court concluded that, while a claim of race discrimination reasonably grew out of the claim of national origin discrimination raised in her EEOC charge, Ramon's claims for hostile work environment and retaliation were barred because "[n]o matter how leniently the Court reads her EEOC charge," she alleged nothing related to such claims.  R2-87 at 5–6.  Next, the district court found that Ramon's claim for race discrimination with respect to the April 2001 denial of STD leave was time barred because she failed to file her 1 August 2002 EEOC charge within 300 days of that employment act.  With respect to Ramon's Title VII sex discrimination claim, the court found that she had failed to dispute AT&T's legitimate, nondiscriminatory reason for ceasing to pay her a bilingual pay differential when she was transferred to BSAC, namely that BSAC did not provide such a pay differential to any employees, regardless of sex.  Similarly, the district court found that Ramon had failed to meet her burden under the Equal Pay Act of showing that her job and the job of the male employee required equal skill, effort, responsibility, or are conducted under similar conditions or that AT&T had illegally discriminated against Ramon where the pay structure for the Provisional

Department was different from that of BSAC.[3]

Next, the district court found that Ramon had failed to show that AT&T had discriminated against her based on her race or national origin by terminating her without giving her a three-day grace period, where no such policy existed. The court noted that, similar to Doreen Caffrey, the white employee she claims was treated more favorably, Ramon was given the chance to come back to work when she was informed by letter that she could either get approval for FMLA leave or return to work by 14 March 2002. Additionally, the district court found no evidence that AT&T treated employees of different races more favorably when terminating them or provided a three-day grace period and noted that the specifics of Caffrey's termination were part of a confidential mediation settlement with the EEOC and were not the product of any uniform employment practice of allowing a three-day grace period. Finally, the district court found that Ramon failed to offer any proof or argument as to how her condition constituted a disability under the ADA or how AT&T discriminated against her on that basis.

---

[3] Ramon makes no argument concerning the district court's grant of summary judgment in favor of AT&T on her EPA claim. Accordingly, her EPA claim is deemed abandoned. Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 (11th Cir. 1999).

C. Ramon's Arguments on Appeal

Ramon argues that her claims for hostile work environment and retaliation were not outside the scope of her EEOC charge, claiming that those claims were related to, or grew out of, her EEOC charge. Her EEOC charge stated that she was told that she was losing her bilingual pay although she would have to continue to provide translation services. Ramon maintains that an inference could be made from this claim that her pay was reduced in retaliation for her complaints to supervisors about discriminatory acts and for seeking short-term disability leave. She argues that her hostile work environment claim can be inferred from her EEOC charge, because her allegations with respect to the disparity in treatment regarding her pay and disability leave and that of her coworkers indicate that her work environment was harsher, more strict, and less rewarding than the environment of her coworkers.

Ramon argues that the district court erred by granting summary judgment to AT&T on Ramon's Title VII discrimination claims. Specifically, she maintains that the district court, by finding that Ramon failed to dispute AT&T's proffered legitimate, non-discriminatory reason, did not review Ramon's pleadings in light of her pro se status and lack of legal training. She argues that she was subject to the transfer to the BSAC and the resulting pay cut was a result of gender

9

discrimination because a male employee within BSAC and a male employee who remained in the Provisioning Department continued to receive the pay differential.[4] Ramon also contends that the district court erred by granting summary judgment on her race/national origin discrimination claims because it focused on her claim regarding her termination without the three-day grace period, even though she also asserted that she was treated differently than white employees with respect to the administration of STD leave.

Finally, Ramon argues that she established a <u>prima facie</u> case of discrimination under the ADA. She maintains that UNUM Provident's finding that Ramon was not limited due to asthma or other cardiopulmonary disorders was not conclusive as to whether she was disabled because it was based on a review of various reports and not an examination of Ramon.[5] She argues that her own medical reports were in direct contradiction with the UNUM assessment, creating a genuine issue of material fact as to whether she was disabled during the relevant time period.

---

[4] We could find nothing in the record to support the contention that a male employee in the BSAC received extra pay for bilingual services.

[5] UNUM Provident administered AT&T's disability benefits.

## II. DISCUSSION

"A district court's grant of summary judgment is reviewed de novo." Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002) (per curiam). A court shall grant summary judgment when the evidence before it shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." Rojas, 285 F.3d at 1341–42 (citation and quotations omitted). Additionally, while pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

A. Jurisdiction Over Nonexhausted Claims and Time Barred Allegations

Prior to filing a Title VII action, a plaintiff first must exhaust her administrative remedies by filing a charge of discrimination with the EEOC. Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per

11

curiam). "For a charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (per curiam); 42 U.S.C. § 2000e-5(e)(1).

A plaintiff's judicial complaint is limited by the scope of the EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." Gregory, 355 F.3d at 1280. However, "the scope of an EEOC complaint should not be strictly interpreted." Id. In order to establish a hostile work environment claim, the plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993) (citations omitted).

Ramon has pointed to no allegation in her EEOC charge that reasonably points to the kind of pervasive and oppressive conditions that would allow us to conclude that she intended to have the EEOC investigate the workplace for a hostile work environment. Likewise, Ramon did not check the retaliation box on the EEOC charge form and failed to illustrate in the charge her claim later made in the complaint that the relocation from the provisioning department to the BASC

was a result of her complaints and STD leave seeking. Because neither a retaliation nor a hostile work environment claim could have reasonably been expected to grow of the allegations made by Ramon in her EEOC charge, the district court did not err by finding that she failed to exhaust those claims.

The Supreme Court has recognized that Title VII's statute of limitations for filing EEOC charges works differently for disparate treatment and hostile environment cases. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073–74 (2002). "A discrete . . . discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." Id. at 110, 122 S. Ct. at 2070–71. Discrete acts that fall within the statutory period do not make related acts that fall outside the period timely. Id. at 113, 122 S. Ct. at 2072. On the other hand, hostile environment claims, which are based on the cumulative effects of individual acts, collectively may "constitute 'one unlawful employment practice.'" Id. at 117, 122 S. Ct. at 2074.

We consider Ramon's claims for racial discrimination based on acts that occurred prior to 5 October 2001 to be time barred. Ramon maintains that the pattern of wrongful acts should be treated as a single unlawful practice as opposed to discrete acts of racial discrimination. She states that this pattern of

13

discriminatory conduct by her coworkers and supervisors gave rise to her hostile

work environment claim.  However, because any putative hostile work

environment claim was not exhausted in an EEOC charge, the district court did not

err by finding that Ramon's allegations of discrimination prior to 5 October 2001

were time barred, as falling outside of the 300-day statutory period.[6]

B.  Ramon's Title VII Claims

Title VII makes it unlawful for an employer to discriminate against an

employee based on her race, color, religion, sex, or national origin.  42 U.S.C.

§ 2000e-2(a)(1).  A plaintiff shows that she was discriminated against in violation

of Title VII by establishing that "(1) she is a member of a protected class; (2) she

was subjected to adverse employment action; (3) her employer treated similarly

situated employees who are not members of the plaintiff's class more favorably;

and (4) she was qualified for the job or job benefit at issue."  Rice-Lamar v. City of

Fort Lauderdale, Fla., 232 F.3d 836, 842–43 (11th Cir. 2000).  Once the plaintiff

establishes a prima facie case, the burden shifts to the defendant to rebut the

inference of intentional discrimination by presenting legitimate, nondiscriminatory

reasons for its employment action.  Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 888

---

[6] For this reason, we have omitted from the background section of this opinion alleged discrete acts of discrimination that we may not consider.

14

(11th Cir. 2005).  Where the defendant carries its burden, the plaintiff must then "come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination."  Id.

The district court did not err by granting summary judgment to AT&T on Ramon's gender discrimination claim because her inference that the transfer to a different division was based on discrimination was insufficient to establish a prima facie case of discrimination, and she presented no evidence refuting AT&T's proffered legitimate, nondiscriminatory reason for no longer paying Ramon the bilingual pay differential after the transfer, that is, no one in the BASC received extra money for bilingual services.  Additionally, the district court did not err by granting summary judgment to AT&T on Ramon's race/national origin discrimination claims because Ramon failed to rebut AT&T's explanation for terminating her without allowing a three-day grace period—that there was no policy establishing such a grace period—and any evidence regarding whether AT&T employees were treated differently in the administration of STD leave is time barred because those incidents happened before 1 October 2005.

C.  Ramon's ADA Claims

To establish a prima facie case of disability discrimination under the ADA, a

15

plaintiff must show "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Ramon has failed to submit evidence sufficient to survive summary judgment that her health issues substantially limited a major life activity. As such, she failed to establish a prima facie case of disability discrimination under the ADA, and the district court did not err by granting summary judgment on that claim.

## III. CONCLUSION

Ramon has challenged the district court's grant of summary judgment for AT&T on her employment discrimination and retaliation claims. We agree with the district court that Ramon failed to exhaust administrative remedies as to some claims and that some factual allegations could not be considered as time barred. Concluding that Ramon has not refuted AT&T's legitimate reasons for the claimed discriminatory actions and that Ramon has failed to connect her health issues to an impairment of a life function, we **AFFIRM**.