[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13666
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00054-CV-CAM-1

DONALD D. ANDERSON,

Plaintiff-Appellant,

versus

EMBARQ / SPRINT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 20, 2010)

Before EDMONDSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Donald D. Anderson, a 51-year-old black man, proceeding *pro se*, appeals the district court's grant of summary judgment to Embarq on his claims under the Americans with Disabilities Act of 1990 (ADA),[1] Title VII of the Civil Rights Act of 1964 (Title VII),[2] and the Age Discrimination in Employment Act of 1967 (ADEA).[3] Anderson challenges the district court's disposition of his claims for (1) failure to promote, (2) disability discrimination under the ADA, (3) racial discrimination under Title VII, (4) age discrimination under the ADEA, and (5) retaliation under Title VII. Because the district court properly disposed of Anderson's claims, the judgment is affirmed.

## I. ANDERSON'S FAILURE TO PROMOTE CLAIM

Anderson argues that his employer, Embarq, wrongly failed to promote him.[4] The district court dismissed this claim, explaining that Anderson had not exhausted the available administrative remedies. We review this determination *de novo*. *See Alexander v. Hawk*, 159 F.3d 1321, 1323 (11th Cir. 1998).

---

[1] 42 U.S.C. § 12101 *et seq.*

[2] 42 U.S.C. § 2000e *et seq.*

[3] 29 U.S.C. § 621 *et seq.*

[4] As the district court noted, it is not clear under which statute Anderson seeks to advance his failure to promote claim.

Before filing suit under Title VII, the ADA, or the ADEA, a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1) (stating plaintiff must file Title VII charge within 180 days after the alleged unlawful employment practice); 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA); 29 U.S.C. § 626(d) (stating plaintiff must file age discrimination charge within 180 days after the alleged discrimination).

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* (quotation omitted). We have noted that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint," but we have also warned that "allegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004).

Anderson did not include a failure to promote claim in his EEOC charges. In his EEOC charges, Anderson complained only of race discrimination, age

3

discrimination, disability discrimination, and retaliation. According to Anderson, his failure to promote claim developed in July 2006, *before* the events that gave rise to his EEOC charges. The EEOC could not reasonably have been expected to investigate this claim that arose before the acts that Anderson cited in his charge. Because this new allegation of discrimination does not clarify the allegations in his EEOC charges, the district court properly dismissed this claim for failure to exhaust administrative remedies.

## II. ANDERSON'S ADA DISABILITY-DISCRIMINATION CLAIM

Anderson alleges that Embarq wrongly denied him the reasonable accommodation of "light-duty work" after he injured himself in an off-the-job accident.[5] The district court granted summary judgment in favor of Embarq on this ADA discrimination claim; we review that determination *de novo*, viewing all the evidence and drawing all reasonable inferences in favor of Anderson, the non-moving party. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is proper if the pleadings, depositions, and affidavits in this case show there is no genuine issue of material fact such that Embarq is

---

[5] On September 7, 2006, Anderson slipped, fell, and injured himself at a Publix grocery store. Prior to this accident and the resulting short-term disability leave, Anderson worked for Embarq as a "distribution center person"—a physical job that required Anderson to both stand and walk, as well as to push, pull, lift, and carry boxes that weighed up to seventy pounds frequently and continuously. In December 2006, Anderson requested "light-duty work" as an accommodation for his reduced physical capacity because of his injuries.

4

entitled to judgment as a matter of law. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007) (internal quotations omitted).

This Circuit analyzes ADA discrimination claims under the *McDonnell-Douglas*[6] burden-shifting analysis. *Holly*, 492 F.3d at 1255 (internal quotation omitted). To successfully state a claim under this framework, Anderson must first establish a *prima facie* discrimination case, meaning he must show: (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. *See id.* at 1255–56.

As to the second element, relevant here, the ADA defines "qualified individual" as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of" his job. 42 U.S.C. § 12111(8). An employer impermissibly discriminates against a qualified individual when the employer does not reasonably accommodate the individual's disability. 42 U.S.C. § 12112(b)(5)(A). An accommodation is "reasonable," and therefore required under the statute, "only if it enables the employee to perform the essential functions of the job." *Holly*, 492 F.3d at 1256. Importantly, "[i]f the individual is unable to perform an essential function of his job, even with an

---

[6] *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Id.* (quotation omitted).

"[E]ssential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Id.* at 1257. Determining whether a particular job duty is an essential function involves a factual inquiry to be conducted on a case-by-case basis. *Id.* at 1258. Courts consider the employer's judgment regarding whether a function is essential, as well as (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the individual to perform the function, (3) the terms of a collective-bargaining agreement, (4) the work experience of individuals who held the job in the past, and (5) the work experience of individuals currently in similar jobs. *Id.* at 1257–58.

In this case, Anderson has failed to show he is a "qualified individual" for purposes of the ADA because he has not shown he could perform the "essential functions" of his job. *See* 42 U.S.C. § 12111(8). Anderson's job required him to lift boxes that weighed less than ten pounds, although he occasionally lifted boxes weighing forty, fifty, or sixty pounds. The job description for Anderson's position—"distribution center person"—stated that Anderson's tasks required him to stand, walk, as well as push, pull, lift, and carry boxes that weighed up to

6

seventy pounds frequently and continuously, which, according to the job-description form, was more than 33% of the time. Accordingly, lifting was an essential function of Anderson's job. Anderson's request for forklift work only, however, eliminates this essential function. Thus, because Anderson's requested accommodation would eliminate an essential function of his job, it was not reasonable and was therefore not required under the statute. *See Holly*, 492 F.3d at 1256. Accordingly, his accommodation claim fails and the district court properly granted summary judgment in Embarq's favor.[7]

### III. ANDERSON'S TITLE VII RACIAL-DISCRIMINATION CLAIM

Anderson further argues that Embarq racially discriminated against him. The district court likewise granted summary judgment on this Title VII racial-discrimination claim. We review this determination *de novo*, applying the same standards applicable to the ADA discussed in Part II. *See Vessels*, 408 F.3d at 767.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[7] Furthermore, Anderson cannot show that even with his requested accommodation—light-duty work on a forklift—he could have performed the essential functions of his job. Anderson suffered from other issues that prevented him from returning to work, and, by his own admission, these issues did not improve until July 2007. Further, Anderson expressed concern over operating a forklift while on pain medication and, at the time of his light-duty work requests, Anderson's doctors had not approved his return to work. Anderson's termination claim is deficient for the same reasons.

color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff relies on circumstantial evidence to prove discrimination or retaliation under Title VII, we employ the *McDonnell-Douglas* burden-shifting analysis, under which Anderson bears the initial burden of establishing a *prima facie* case of discrimination. *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th Cir. 2008).

To establish a *prima facie* case under Title VII, Anderson must show (1) he is a member of a protected class, (2) he was qualified for the job in question, (3) he was subjected to an adverse employment action, and (4) his employer treated similarly situated employees outside his class more favorably. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). As to the second element—that he was qualified for the job—Anderson must show only that he satisfied Embarq's *objective* employment qualifications. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005).

As discussed in Part II. *supra*, Anderson has not shown he was qualified for his job: he could not lift up to 70 pounds frequently and continuously, he suffered from neurological issues that caused bowel problems, he expressed concern regarding his ability to operate a forklift, and, above all, he had not been cleared by a physician to return to work. Accordingly, because Anderson has failed to satisfy at least one of the elements of his *prima facie* case, the district court properly

granted summary judgment in Embarq's favor on the Title VII discrimination claim.

## IV. ANDERSON'S ADEA AGE-DISCRIMINATION CLAIM

Anderson also alleges that Embarq wrongly discharged him because of his age. This claim was based primarily on an Embarq human resources employee's alleged comment to Anderson that he was discharged "because [he] was 51 years old and had back problems [such] that [he] couldn't do the job anymore." The district court granted summary judgment on this age-discrimination claim, and we likewise review this determination *de novo*, viewing the evidence and drawing all reasonable inferences in Anderson's favor. *See Vessels*, 408 F.3d at 767.

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Chapman*, 229 F.3d at 1024 (citing 29 U.S.C. § 623(a)(1)). Like in ADA and Title VII contexts, when a plaintiff relies on circumstantial evidence to prove a discrimination under the ADEA, we employ the *McDonnell-Douglas* burden-shifting analysis.[8] *Chapman*, 229 F.3d at 1024.

---

[8] Although Anderson also could have stated a *prima facie* case with *direct* evidence of discrimination, *see Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999), Anderson presented no such evidence to the district court. Direct evidence is "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or

Under this framework, Anderson must first establish a *prima facie* case of discrimination. *Id.* To do so, Anderson must show he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. *Id.*

Anderson's ADEA claim suffers from the same deficiency as does his Title VII claim discussed in Part III *supra*—that is, at the time of his light-duty request and his termination, Anderson could no longer meet the objective qualifications of his job. Moreover, Anderson did not identify a younger person that Embarq treated more favorably. Accordingly, because Anderson has failed to meet at least two of the elements of a *prima facie* case for age discrimination under the ADEA, the district court properly granted summary judgment in Embarq's favor.

## V. ANDERSON'S TITLE VII RETALIATION CLAIM

Finally, Anderson contends that the denial of his light-duty work request and his ultimate termination was in retaliation for his comments at a company

---

retaliation complained of by the employee." *Id.* (quotation and citation omitted). Such evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism." *Id.* at 1358–59. Accordingly, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age will constitute direct evidence of discrimination." *Id.* at 1359 (quotation and citation omitted).

10

meeting.[9] The district court also granted summary judgment on this Title VII

retaliation claim; like the other grants of summary judgment, we review this

determination *de novo*, viewing the evidence and drawing all reasonable inferences

in Anderson's favor. *See Vessels*, 408 F.3d at 767.

Under Title VII, an employer may not retaliate against an employee because

the employee has opposed an unlawful employment practice. *EEOC v. Total Sys.*

*Serv., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show

(1) he engaged in a protected activity, (2) he suffered an adverse employment

action, and (3) there was a causal connection between the protected activity and the

adverse employment action. *Crawford*, 529 F.3d at 970–74.  The causal-

connection prong requires a plaintiff to demonstrate that "the decision-makers were

aware of the protected conduct, and that the protected activity and the adverse

action were not wholly unrelated."  *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th

Cir. 2008) (quotation and alterations omitted).  Although a causal connection can

be established by the close temporal proximity between the protected activity and

the adverse action, *id.*, we have held that a "three to four month disparity between

---

[9] At an August 23, 2006, meeting, Anderson commented on Embarq's policy regarding employees' "perfect attendance." Another employee commented on Embarq's alleged failure to promote African Americans. Anderson believes Embarq may have attributed the other employee's comment to him.

11

the statutorily protected expression and the adverse employment action is not enough," *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Here, Anderson has not established a *prima facie* case of retaliation. Even assuming *arguendo* that Anderson's perfect-attendance comment at the August 2006 Embarq meeting constituted protected expression—or that another employee's objection that was erroneously attributed to Anderson constitutes protected expression—Anderson has not established a causal connection between those remarks and either the denial of light-duty work or his termination. *See Crawford*, 529 F.3d at 970. Neither the decisionmaker who denied Anderson's light-duty request nor the decisionmaker who terminated Anderson's employment was aware of Anderson's comment. Further, the respective decisions were made some four and eight months after the August 2006 meeting in question. Thus, because Anderson has not shown a causal connection between any protected activity and the adverse employment action, he has not established a *prima facie* case of retaliation. Accordingly, the district court properly granted summary judgment in Embarq's favor.

**AFFIRMED.**

12